UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL OZIER,

        Plaintiff,

                                      File No.  4:04-CV-46

v.

                                      HON. ROBERT HOLMES BELL

RTM ENTERPRISES OF GEORGIA,
INC., d/b/a ARBY'S,

        Defendant.

_____/

**O P I N I O N**

       Plaintiff Michael Ozier ("Ozier") filed this action against Defendant RTM Enterprises, Inc., d/b/a Arby's ("RTM"), alleging race discrimination and retaliation under 42 U.S.C. § 1981, and Michigan's Elliott-Larsen Act, MICH. COMP. LAWS § 37.2101, and violations of the Bullard-Plawecki Right to Know Act, MICH. COMP. LAWS § 423.501.  Before the Court is Defendant's motion for summary judgment.  This Court has carefully reviewed all briefs, depositions, and affidavits and has had the benefit of extensive oral argument.  For the reasons that follow, the Court will grant Defendant's motion for summary judgment on all claims.

## I.  Statement of Facts

Plaintiff, an African-American man, was hired on December 27, 2000, as a "team member" (entry level position) at an Arby's franchise owned by Defendant RTM.  Plaintiff was hired by assistant managers Frank Davis (African-American) and Pete Silva (Latino).

The area manager Phil Morris (Caucasian), managed six Arby's restaurants and had authority over the individual restaurant managers.  At some point in time, Davis recommended to Morris that Plaintiff receive a promotion to "shift manager."  Davis was replaced with another manager, Shamus (Indian/Asian) who also recommended Plaintiff for the "shift manager" position.   Shamus was succeeded by D'ann Tierney (Caucasian) as manager.

By early 2002, Plaintiff had learned all of the tasks of a "team member" and was promoted to a "team trainer" because he was capable of training new employees.  Morris, Shamus, and Tierney gave Plaintiff favorable employment reviews.

Tierney gave Plaintiff the standard manual for training a "shift manager" and worked briefly with Plaintiff on the training program.  (Tierney Dep. at 69).  This training program required active participation and mastery of information by the trainee, and is largely driven by the employee.  (Morris Dep. at 11).  The training manual was 44 pages long.  Trainees were required to check off numerous activities on each page as they were completed and have them initialed by their manager.  (Def. Ex. 6).  Plaintiff only completed the first section of the first page.  *Id.*  When Plaintiff was questioned by Tierney or her assistant manager

about the information contained in the manual, Plaintiff was unable to answer their questions. (Tierney Dep. at 135-38).   Plaintiff claims that some of the tasks identified in the Shift Managers Training Book were not self explanatory and he needed training on them.  (Ozier Aff. ¶ 2).  He contends that although he asked for training on those tasks from Tierney, she did not help him.  *Id.*  Tierney did, however, assign Bill Goodwin, her assistant manager, to work with Ozier, (Tierney Dep. at 93), and Goodwin did in fact assisted Ozier on his training.  (Ozier Dep. at 68).  However, neither Tierney nor Goodwin could help Plaintiff with memorization tasks.  (Tierney dep. at 93-94).  They did not give Plaintiff written tests on the various sections of the management training book because their oral questioning revealed that Plaintiff did not know the information and would not pass the tests.  (Tierney Dep. at 93).

Tierney, Shamus, and Davis noted that Plaintiff's positive traits included punctuality, good personality, good customer service, and knowledge of his tasks.  However, Tierney noted that Plaintiff lacked initiative when another manager was not present, and that he required supervision.  (Tierney Dep. at 57).  Based on his need for supervision and lack of self motivation in the training program, Tierney began to doubt that Plaintiff was qualified for the "shift manger" position.  Tierney informed Plaintiff of her doubts regarding his qualification for the position, and told Plaintiff that he would have to "step it up" if he wanted the management position.  (Tierney Dep. at 70).  Although Plaintiff disagreed that his performance was deficient, when Tierney gave him specific examples of his deficiencies

and his need to impress her the way he had impressed previous managers, Plaintiff did not challenge her assessment.  He simply responded "okay" (Ozier Dep. at 61 & 105, Tierney Dep. at 70-71).

Morris assigned three managers, who were all Caucasian women, for Tierney to train. (Morris Dep. at 25).  These managers were subjected to a different training program than Plaintiff because they were hired under RTM's salaried management training program, which is different from the internal promotion of an hourly worker.  *Id.*  Tierney trained these three women for the "shift manager" position, and Bill Goodwin, Tierney's assistant manager, continued to work with Plaintiff in his training for the potential promotion.  (Ozier Dep. at 68).

Plaintiff worked with the cash register.  Defendant's computer records indicate that the Plaintiff's cash drawer had four  shortages of $21.02, $10.00, $20.87, and $5.09 on March 25, 2002, June 13, 2002, December 9, 2002, and February 3, 2003.  (Def. Ex. 7-10). The computer records indicate that after the second cash shortage on June 13, 2002, Plaintiff was "counseled on responsibility and accountability of his drawer." (Def. Ex. 8).  After the third cash shortage on December 9, 2002, the computer records indicate that Plaintiff was warned that he "has had excessive cash shortages and needs to be more careful with handling money." (Def. Ex 9).  After the fourth cash shortage on February 3, 2003, Tierney advised Plaintiff that he was terminated because of his excessive cash shortages. (Ozier Dep. at  55).

Company policy provided for termination after three cash shortages.[1]  Plaintiff was aware of

RTM's cash handling policy.  He knew he could be terminated for three cash shortages and

that he could be immediately terminated for any shortage in excess of $10.00.  (Ozier Dep.

at 90-91).

Plaintiff has no memory of the first two cash shortages alleged by RTM, but he

acknowledges that he was confronted about the later two shortages.  (Ozier Dep. at 50-52,

56-60, 129-33).  Plaintiff also acknowledges receiving the written warning after the third

shortage, which informed him that he had excessive cash shortages.  (Ozier Dep. at 53, 59,

130-31).   Plaintiff does not assert, nor has he presented, evidence that he ever denied or

contested the language in the third write-up.

While he was still employed, Plaintiff became upset because he was not being

promoted.  Plaintiff complained to other employees that he was not being trained and

promoted because he was black.  (Ozier Dep. at 95-96; Ozier Aff. ¶ 3; Waswick Dep. at 12-

15).   Tierney repeatedly heard from other employees as early as October 2002 that Plaintiff

was talking behind her back to the other employees, making derogatory comments about her

---

[1]Company Policy Provides:

If your drawer is over or short, you may be subjected to discipline as follows:
1).  First offense- verbal warning (documented); 2). Second offense- Written
warning; 3).  Third offense- termination.  An overage or shortage of $10 or
more may result in immediate termination.

(Def. Ex. 6).  Furthermore, shortages or surpluses of $5.00 or more are considered material
violations of the cash handling policy.  (Silva Dep. at 39)

and her work ethic. (Tierney Dep. at 85-86). Waswick recalls telling Tierney about Plaintiff's comments in January 2003. (Waswick Dep. at 14-15).

In October Tierney sat down with Plaintiff and asked him why he was upset with her. She advised him that if he had complaints he should bring them to her first. (Tierney Dep. at 87-88). Tierney testified that subsequent to the meeting Plaintiff did not voice any complaints to her in person, but continued to make comments behind her back. (Tierney Dep. at 88).

Tierney claims that she fired Plaintiff entirely due to his cash shortages and that she made no reference to his criticism of her when she fired him shortly after February 3, 2003. Id. Plaintiff, however, claims that Tierney stated "I heard you have been talking about me behind my back" at the time of termination. (Ozier Dep. at 54-55). When Plaintiff asked if she was firing him for his comments, Tierney responded that she was firing him for his cash shortages. (Ozier Dep. at 55).

After Plaintiff was dismissed, he requested a copy of his personnel file. Plaintiff received a few pieces of paper, but not the complete file. (Ozier Dep. at 100-01). What happened to the rest of the file is unknown. RTM has searched extensively for this file, but has been unable to locate it. (Mench Aff. ¶ 3-4, Wendorf Aff. ¶ 2-3).

## II.  Standard of Review

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.

6

Fed. R. Civ. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.,* 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.,* 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Trustees of Resilient Floor Decorators Ins. Fund v. A&M Installations, Inc.,* 395 F.3d 244, 247 (6th Cir. 2005); *Mas One Ltd. P'ship v. United States,* 390 F.3d 427, 429 (6th Cir. 2004). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Radvansky v. City of Olmstead Falls,* 395 F.3d 291, 301 (6th Cir. 2005).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the non-moving party's case, but need not support its motion with affidavits or other materials "negating the opponent's claim." *Moore v. Phillip Morris Cos., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To sustain this burden, a plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell,* 375 F.3d 377, 381 (6th Cir. 2004); *Thompson v Bell,* 373

F.3d 688, 731 (6th Cir. 2004). The plaintiff must raise evidence to create a question of fact, but "a mere scintilla of evidence is insufficient." *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004); *Leadbetter v. Gilley*, 385 F.3d 520, 524 (6th Cir. 2001).

### III. Discussion

#### A.    Race Discrimination

Plaintiff claims he was discriminated against in violation of 42 U.S.C. § 1981 and MICH. COMP. LAWS §37.2101.[2]  Discrimination actions brought under 42 U.S.C. § 1981 are analyzed in the same way as actions under Title VII. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Hollins v. Atl. Co. Inc.,* 188 F.3d 652, 658 (6th Cir. 1999). Discrimination may be proved by direct evidence or by proving circumstantial evidence which would support an inference of discrimination under the burden shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *DeBrow v. Century 21 Great Lakes*, 463 Mich. 534, 620 N.W.2d 836, 838 (2001).

#### 1.    Dismissal

Plaintiff claims that he is the victim of racial discrimination in his dismissal and that he has direct evidence to support that claim.  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor

---

[2]Plaintiff initially brought a claim of sex discrimination.  Plaintiff has chosen not to pursue this claim, and has instead chosen to pursue only race discrimination.  (Pl. Br. at 15).

in the employer's actions." *Hopson v. DaimlerChrysler Corp.*  306 F.3d 427, 433 (6th Cir. 2002) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  Direct evidence of discrimination can include racial slurs.  *Graham v. Ford*, 237 Mich. App. 621, 677, 604 N.W.2d 713 (1998).  It can also include statements which indicate that membership in a protected class makes a person unfit for the position. *DeBrow*,  463 Mich. at 539.  Direct evidence of racial discrimination can be established by "demonstrating the existence of a discriminatory hiring pattern and practice." *Int'l. Bhd. of Teamsters v. United States*, 431 U.S. 324, 358-59 (1977) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 751 (1976)).

Plaintiff argues that RTM engaged in a pattern of discriminatory hiring because the area manager, Phil Morris, did not hire a single African-American for any managerial position.  (Pl. Br. at 14).  This conclusory allegation is not supported by the record. Plaintiff's limited investigation of this subject has not provided the Court with evidence of a discriminatory pattern of hiring by RTM.  The record indicates a diverse group of managers including the employment of at least two African-Americans, a Latino, an Indian (Asian), and many women.  While Morris may not have hired Ron Sorsby (African-American), Sorsby was employed under Morris for an extended period of time.  Furthermore, there is evidence that another African-American named Eugene was a manager (Tierney Dep. at 34-35).  Plaintiff has not presented any direct evidence of racial discrimination or a discriminatory pattern of hiring or firing by RTM.

9

Plaintiff must therefore establish a *prima facie* case of discrimination under the *McDonnell Douglas* test.  Under the *McDonnell Douglas* test, the Plaintiff must first establish a *prima facie* case by establishing the following elements:  1) that he is a member of a protected class; 2) that he was qualified for his job and performed it satisfactorily; 3) that he suffered an adverse employment action; and 4) that he was treated less favorably than a similarly situated individual outside of his protected class. *Johnson*, 215 F.3d at 572-73.

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove that it had a legitimate non-discriminatory reason for taking the adverse employment action.  *Id*. at 573.  If the defendant establishes a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to prove that the reason is false or is simply a pretextual reason to hide behind actual discrimination.  *Id*.  Plaintiff must prove not only that defendant's reason was a pretext, but that the real reason was discrimination. *E.E.O.C. v. Avery Dennison Corp*., 104 F.3d 858, 862 (6th Cir. 1997) (citing *St. Mary's v. Hicks*, 509 U.S. at 511).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

There is no question that Plaintiff meets the first and third elements of the test. Plaintiff is an African-American who was dismissed from his employment.  The second and fourth elements, however,  need to be analyzed in further detail.

To meet the second element, Plaintiff must have been qualified for his job and performed it satisfactorily. *Johnson,* 215 F.3d at 573. Under Title VII and the Elliott-Larsen Act "[a]n employee is qualified if she performed her job at a level that met the employer's legitimate expectations." *Ruffin v. Schupan & Sons, Inc.,* 1998 U.S. Dist. LEXIS 20103 at *9 (E.D. Mich. Nov. 20, 1998) (unpublished opinion).

Plaintiff's only challenge to RTM's documentary evidence, which indicates four cash shortages, is the assertion that computer records could be easily produced or faked after the fact. (Pl.'s Reply at 12). Ozier's failure to recall the first two cash shortages and his speculation that the computer records could have been falsified is insufficient to create an issue of fact. A mere denial, with no proof to support such denial, is insufficient to defeat summary judgment. *See EEOC v. E.J. Sacco*, 102 F. Supp.2d 382, 391 (E.D. Mich. 1999) ("Significantly, a plaintiff's denial of the defendant's articulated reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment.") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992); *see also Gant v. Univ. of Main Hosp. Envtl. Servs.,* 2001 U.S. Dist. LEXIS 3059 at *12 (E.D. Mich. Jan. 30, 2001) (unpublished opinion) ("While Gant denies sleeping on the job and/or says he was sleeping during a break, Gant offers no evidence to support these assertions . . . Overall, Gant has failed to create a genuine issue of material fact as to whether the University has discriminated against him or retaliated against him when he was terminated for sleeping on the job.").

Moreover, the warning after the third cash shortage provides clear evidence that Plaintiff had prior shortages. Plaintiff concedes that he was warned that he "has had excessive cash shortages and needs to be more careful with handling money." (Def. Ex. 9). The word "excessive" in the warning indicates prior incidents. It is logical that Plaintiff would contest and not confirm this warning if there were truly no previous cash shortages. In conclusion, Plaintiff has failed to raise evidence to rebut Defendant's computer records and has not created a question of fact surrounding the number of cash shortages.

Plaintiff was not qualified for his job and did not perform satisfactorily because he had four cash shortages from his register. According to company policy, this was grounds for termination. Plaintiff did not satisfy RTM's legitimate expectations for their employees. Accordingly, Plaintiff has failed to satisfy the second element of his prima facie claim.

Plaintiff has also failed to satisfy the fourth element which requires him to show that he was treated less favorably than a similarly situated individual outside of his protected class. *See Johnson,* 215 F.3d at 573. Plaintiff cites no instance where a Caucasian employee was treated more favorably regarding cash shortages. In fact, on one occasion, while Plaintiff and a Caucasian co-worker were working out of the same cash drawer, the Caucasian co-worker was fired for a cash shortage while Plaintiff was merely warned (Ozier Dep. at 50-53, 59). Plaintiff has failed to show that he received less favorable treatment than a similarly situated individual outside his class. "[W]here an employer discharges individuals, both black and white, for the same conduct, however, a plaintiff cannot establish

a prima facie case of discrimination." *Agee v. Northwest Airlines, Inc.*, 151 F. Supp.2d 890, 893-94 (E.D. Mich. 2001). Plaintiff has failed to establish a *prima facie* case and his claim of race discrimination fails as a matter of law.

Even if the Court were to assume that Plaintiff had established a *prima facie* case, his claim would still not survive summary judgment. RTM has met its burden of articulating a legitimate non-discriminatory reason for dismissing Plaintiff by pointing to his cash shortages. Plaintiff must therefore prove that the cash shortage was a pretextual reason for Plaintiff's dismissal. *Id.* A plaintiff may prove pretext for discrimination by demonstrating any of the following: 1) that the employer's reason had no basis in fact; 2) that the reason had a basis in fact, but it was not the actual reason motivating the decision, or; 3) if the reason was a motivating factor, it was not sufficient to justify the decision. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

RTM's reason for firing Plaintiff did have a basis in fact because of the cash shortages. To prove that it was not RTM's actual motivating decision, Plaintiff must show circumstances that make an illegal motive more likely than the stated reason. *Smith,* 220 F.3d at 759. Plaintiff must assert facts and cannot rely on unsupported allegations to rebut evidence of non-discriminatory conduct. *Clark v. Uniroyal Corp.*, 327 N.W.2d 372, 826 (Mich. Ct. App. 1982). Plaintiff fails to establish that RTM's articulated reason was pretextual because he relies on unsupported assertions of discrimination and has presented

no evidence which indicates that it was more likely that RTM fired Plaintiff for a discriminatory reason.

Plaintiff also argues that even if the cash shortages were a motivating factor, they were not sufficient to justify his termination because the final shortage of $5.09 is insignificant and because overall Plaintiff was a good employee. However, Plaintiff had been warned about the cash shortages and was clearly in violation of the company policy. Moreover, the $5.09 shortage did exceed the $5.00 amount that constituted a material breach of the cash handling policy. (Silva Dep. at 39). Plaintiff has not come forward with evidence that the company usually overlooked shortages in excess of $5.00. Plaintiff has shown no facts which indicate that his treatment was less favorable than similarly situated employees not in his protected class. The violation of company policy is a clear and legitimate reason for dismissing the Plaintiff. Plaintiff has failed to establish that the cash shortage was not sufficient to justify the decision to terminate him.

Plaintiff also attempts to meet his evidentiary burden by suggesting that the evidence he needs to establish his discrimination claim may have been contained in the missing personnel file. Plaintiff argues that the adverse inference rule should be applied to the lost personnel file, and that the Court should infer that the personnel file, had it been produced, would be detrimental to RTM and beneficial to Plaintiff. Plaintiff argues that by applying an adverse inference a jury could conclude that the personnel file would reveal facts which would show that RTM discriminated against him.

"A jury may draw an adverse inference against a party that has failed to produce evidence only when: (1) the evidence was under the party's control and could have been produced; (2) the party lacks a reasonable excuse for its failure to produce the evidence; and (3) the evidence is material, not merely cumulative, and not equally available to the other party." *Ward v. Consolidated Rail Corp.* 472 Mich. 77, 85-86, 693 N.W.2d 366, 371-72 (2005).  A jury should not be given an adverse inference instruction unless the evidence creates a question of fact regarding whether a party has a reasonable excuse for its failure to produce the evidence. *Clark v. KMart Corp.*, 249 Mich. App. 141, 147, 640 N.W.2d 892 (2002).

Plaintiff argues that RTM "most likely destroyed or, at the very least, negligently lost Mr. Ozier's personnel file." (Pl. Br. in Opp. at 12).  Plaintiff has not supported his accusation of intentional destruction with any evidence.  The facts do not support an inference that the file was intentionally lost, concealed, or destroyed.  RTM has presented sworn testimony that it has searched diligently for the file but that the file is lost and cannot be located.  This evidence is unrebutted.  Plaintiff has provided no facts from which it could be inferred that there was an intentional destruction or concealment of the personnel file or that Defendant's explanation for its inability to produce the file is not reasonable.  Accordingly, this Court will not apply the adverse inference rule.  Plaintiff's contention that the file contained evidence in his favor is purely speculative and is not sufficient to create an issue of fact for trial.  Accordingly, Plaintiff's claim that his dismissal was the product of race discrimination fails.

### 2.    Promotion and/or failure to train

Plaintiff also claims that he was the victim of racial discrimination because he was not trained for or promoted to the "shift manager" position.  Plaintiff argues that there is direct evidence of discrimination by claiming that Tierney said that Plaintiff would have to "kiss her butt" in order to be promoted.  (Ozier Dep. at 79).  Plaintiff's testimony in this area is unclear at best.[3]  "'[S]imple teasing' or 'offhand comments, and isolated incidents' do not

---

[3]The entire testimony relating to this incident is as follows:

Q.    When you talked to D-Ann about your training for the shift manager position and moving forward, did she ever, you know, give you any kind of feedback as to maybe what you needed to do or improving?

A.    No.  I mean, I mean, I was doing everything, but –

Q.    Well, you kind of snickered, so –

A.    I mean, at one–at one–at one certain time, if–if–one certain time-

Q.    Well, you just snickered.  Why did you snicker?

A.    Because at one certain time she had said that, "Don't nobody move, not unless they, you know, kiss a little butt."

Q.    So she said this to you?

A.    Yes.

Q.    So what do you mean by that?

A.    You don't remember that, back behind the counter?  Huh?  You know, you kiss–kiss butt to move up–to move up in the company, you know.  And that's not my job.

Q.    Okay, well, putting it in more polite terms, it's not your job to be nice to your boss to get a promotion?

A.    I mean, I'm nice to everybody.  It's not being nice, it's–I mean, it's not about being nice, because I mean, I'm nice to–I'm nice to–I'm nice to anybody.  Anybody, everybody in the street.  I try to be the best that I can be any time I'm wherever I'm at.

Q.    Well, did you question D'Ann about that when she said you needed to kiss butt to get ahead?

A.    No, no, I just –I just laughed it off, you know, and walked away.

(Ozier Dep. at 79).

amount to direct evidence of discrimination under Title VII." *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 561 (6th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)). Plaintiff's contention that this conversation is evidence of race discrimination is pure speculation. Plaintiff's counsel has taken this incident out of context and overstated its significance.

As with Plaintiff's dismissal, there is no direct evidence of discrimination relating to Plaintiff's non-promotion. Thus, the *McDonnell Douglas* test must be applied. As noted previously, Plaintiff meets the first and third elements of the *prima facie* case because he is African-American and he suffered a negative employment action. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) ("For the purposes of Title VII, a failure to promote is an adverse employment action.").

To satisfy the second element, however, Plaintiff must be qualified for the position. *Johnson*, 215 F.3d at 572-73. While Plaintiff hoped to attain the managerial position, the undisputed facts show that he was not qualified for the position. Tierney noted that Plaintiff required supervision, which is clearly not a characteristic of a manager. Plaintiff had not mastered the essential knowledge to be a "shift manager." Mastery of the information in the manual was the Plaintiff's responsibility, and when Tierney questioned Plaintiff he was unable to answer basic questions. Although Plaintiff claims that Tierney was not assisting him in his training, he acknowledged that the assistant manager was available to help him within his training and that the assistant manager did show him things he was supposed to

be learning in the shift manager's training manual.  (Ozier Dep, at 68).  Although Plaintiff complains that Tierney ignored him and refused to go through the book with him while she was training others, (Ozier Dep. at 73), Plaintiff does not refute Tierney's contention that he was not learning the content in the training manual.  The evidence reveals that Plaintiff's training manual remained almost entirely unmarked.  Plaintiff was primarily responsible for learning the basic content in the shift manager training manual.  As a result of his failure to show initiative in pursuing that training, he failed to learn the material and failed to show that he had the qualities of a manager.  Plaintiff has failed to show he was qualified for the position and thus has failed to satisfy the second element of the prima facie case.

Plaintiff also fails to satisfy the fourth element which requires him to show that he was treated less favorably than a similarly situated employee.  *Johnson*, 215 F.3d at 572-73. Plaintiff argues that he was treated less favorably than three Caucasian women because they received the training and promotion over him.  In order for employees to be "similarly situated," a plaintiff must show that the comparable employees are similarly situated in all relevant respects.  *Mitchell,* 964 F.2d at 582.  Employees that are similarly situated have generally dealt with the same superior, been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstance that would distinguish their conduct or the employer's treatment of them for it.  *Id*.  *See also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir. 1998).

The facts indicate that Plaintiff was not similarly situated with the other management trainees. The management training program was an independent program from the internal promotion program within each restaurant. The management trainees were hired by area manager Morris while Plaintiff was not. Morris directed Tierney to train the three women as "shift managers." Thus, Tierney did not chose the other trainees over Plaintiff. Plaintiff was an hourly employee while the other manager candidates were salaried. Thus, Plaintiff and the other candidates were not part of the same program, were paid differently, and were hired by different people. *See Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (holding that a supervisor was not similarly situated to a non-supervisor). Plaintiff has not come forward with sufficient evidence to show that he was treated differently than similarly situated employees.

Due to the fact that Plaintiff was not qualified for the promotion and because Plaintiff was not similarly situated as the other managerial candidates, he has failed to establish a *prima facie* case of discrimination regarding RTM's failure to train or promote him.

Even if we assume that Plaintiff can establish a *prima facie* case, RTM readily meets its burden of proving that they had a legitimate non-discriminatory reason for not promoting him. Plaintiff has not produced evidence to show that RTM's stated reasons for not promoting him, i.e., his need for supervision, his lack of initiative, his lack of essential knowledge, and his failure to actively pursue the training program, were pretextual. Plaintiff has failed to provide any evidence from which the Court can reasonably infer that RTM's

reasons for not promoting him to the shift manager position were false, not the actual motivating reason, or were insufficient to justify the decision. *Smith,* 220 F.3d at 759. Because Plaintiff has failed to show that the stated reasons were pretextual, Defendant is entitled to judgment on Plaintiff's claim that he was not trained or promoted on account of his race.

**B.   Retaliation**

Finally, Plaintiff alleges that RTM retaliated against him by dismissing him after he claimed that he was the victim of racial discrimination.

Plaintiff argues that Tierney's statement "I heard you have been talking about me behind my back" is direct evidence of retaliation. Statements which suggest discrimination or a retaliatory motive at the time of termination are strong and direct evidence of retaliation. *DeBrow,* 620 N.W.2d at 838. For purposes of this motion the Court will assume that Tierney made this statement at the time of Plaintiff's termination. Nevertheless, this statement is insufficient to establish direct evidence of retaliation. In order for a court to accept a statement as direct evidence of retaliation, a court "cannot engage in the exercise of inferring, interpreting, or otherwise construing what Defendants meant by those statements." *Nishi v. Siemens AG,* 290 F. Supp. 2d 772, 779 (E.D. Mich. 2003). In *Nishi,* the Plaintiff's supervisor suggested: 1) that the Plaintiff's youthful appearance was not good for dealing with their customers, 2) that a new employee looked like Plaintiff but had gray hair, and; 3) that Plaintiff was qualified for a new position because he had matured and become more

20

experienced. *Nishi*, 290 F. Supp.2d at 776. The court held that this was not direct evidence of retaliation because the court would have to interpret what these statements meant and that the "statements did not unequivocally connote discriminatory motives." *Id.*

In this case, when Plaintiff was talking behind Tierney's back, he not only accused her of discrimination, but also made general derogatory comments about Tierney and her work ethic. Although one could infer that when Tierney stated that she heard Plaintiff was talking behind her back she was referring to Plaintiff's allegation that she was discriminating, one could equally infer that she was referring to other derogatory comments that Plaintiff made about her. The statement on its face is therefore not direct evidence of retaliation because the statement on its own does not unequivocally connote discriminatory motives and the Court would have to speculate about what Tierney meant by her statement.

Because Plaintiff does not have direct evidence of retaliation, he must establish a *prima facie* case of retaliation. To do so he must show: 1) that he engaged in a protected activity; 2) that this was known to the defendant; 3) that the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Singfield*, 389 F.3d at 563; *DeFlaviis v. Lord & Taylor*, 223 Mich. App. 432, 436, 566 N.W.2d 661, 663 (1997). Plaintiff's burden in regard to establishing a prima facie case is minimal. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). "Indeed, the burden of establishing the prima facie retaliation case is easily met." *Singfield*, 389 F.3d at 563.

21

Protected activity, for purposes of the first element, includes making a charge, filing a complaint, testifying, assisting, or participating in an investigation, proceeding or hearing (the "participation clause") or opposing a violation of Title VII or Elliott-Larsen (the "opposition clause"). *Booker v. Brown Williamson Tobacco Co. Inc.,* 879 F.2d 1304, 1310 (6th Cir. 1989). Plaintiff has not alleged that he engaged in any activity protected under the participation clause. The only activities Plaintiff contends were protected were his comments to fellow employees that Tierney was discriminating against him in training and promotion because he was black. His conduct is protected, if at all, under the opposition clause. A vague charge of discrimination is not sufficient to constitute opposition to an unlawful employment practice under Title VII, *Booker,* 879 F.2d at 1313; *Minnis v. McDonnell Douglas Technical Servs. Co.*, 162 F. Supp.2d 718, 739 (E.D. Mich. 2001), but may be sufficient to constitute protected activity under Michigan's Elliott-Larsen Act. *See McLemore v. Detroit Receiving Hosp. and Univ. Med. Ctr.,* 196 Mich. App. 391, 396, 493 N.W.2d 441, 443 (1992) ("Regardless of the vagueness of the charge or the lack of formal invocation of the protection of the act, if an employer's decision to terminate or otherwise adversely effect an employee is a result of that employee raising the spectre of a discrimination complaint, retaliation prohibited by the act occurs."). For purposes of this analysis, this Court will assume that Plaintiff has met the first element of establishing that his comments to fellow employees that he was being discriminated against constituted protected activity under Title VII as well as Michigan's Elliott-Larsen Act.

There is no dispute that Plaintiff's comments to fellow employees were known to RTM and that RTM took an adverse employment action by dismissing Plaintiff. Tierney acknowledges as much. Accordingly, Plaintiff has satisfied the second and third elements of a *prima facie* retaliation claim.

With respect to the fourth element, state and federal law apply different standards for determining whether a causal connection between the protected activity and the adverse employment action has been established. In order to show a causal connection under federal law, a plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Stated differently, to prove a causal connection, a claimant "must produce sufficient evidence from which an inference can be drawn that the [employer] took the adverse employment action because [the claimant] filed a discrimination charge." *Singfield*, 389 F.3d at 563.

Under Michigan law, a claimant must prove that the protected activity was a "significant factor" contributing to his termination. *Aho v. Dep't of Corrections*, 263 Mich. App. 281, 289, 688 N.W.2d 104, 109 (2004). "To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a 'significant factor' in the employer's adverse employment action, not merely that there was a causal link between the two events." *Id.* "Thus, mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between such action

23

and the protected activity." *Id.* "A factor can be a 'cause' without being 'significant.' Only the latter is sufficient to show retaliatory discharge" under Michigan law. *Booker,* 879 F.2d at 1310.

Plaintiff contends that he has met his burden of showing a causal connection based on the temporal proximity between his complaints to his fellow employees and his dismissal. "[E]vidence that . . . the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Singfield*, 389 F.3d at 563 (quoting *Nguyen*, 229 F.3d at 563). Temporal proximity alone, however, is insufficient to establish a causal connection for a retaliation claim. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001) (citing *Nguyen*, 229 F.3d at 566). In *Singfield* the Sixth Circuit held that the employee's discharge within three months of filing a discrimination charge was sufficiently close in time to permit an inference of retaliatory motive. 389 F.3d at 563. In *Singfield*, however, the evidence of temporal proximity did not stand alone. There was also evidence that the employer did not begin investigating the circumstances that gave rise to the plaintiff's dismissal until after he had filed his discrimination claim. *Id.* at 564.

In this case there is no dispute that Tierney knew Plaintiff had been complaining that she was discriminating against him since October 2002. She did not fire him until the following February. (Tierney Dep. at 87-88). The temporal proximity is accordingly not as close as Plaintiff would suggest. Moreover, Plaintiff has submitted no evidence other than temporal proximity to support his assertion that there was a causal connection between his

24

complaints and his termination. Because temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim, this Court concludes that Plaintiff has failed to meet the fourth element of his retaliation prima facie case.

Even if this Court were to assume that Plaintiff has established a causal connection sufficient to make out his prima facie case of retaliatory discharge, the Court would nevertheless enter summary judgment in favor of RTM because Plaintiff cannot show that RTM's articulated reasons for his dismissal were pretextual. The Sixth Circuit has advised that because an employer's true motivations are often difficult to ascertain, "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfield*, 389 F.3d at 564. This Court understands the need for caution. Nevertheless, in this case the employer's true motivations are not difficult to ascertain. RTM has never wavered from its assertion that it dismissed Plaintiff for repeated cash shortages. Termination for cash shortages is consistent with company policy. The policy was known to Plaintiff, and the policy had been used to terminate other non-minority employees. Furthermore, Plaintiff had been warned that he needed to be more careful with money. When an employee is warned that termination will result from certain behavior, and the employee participates in that behavior and is dismissed in accordance with the warning, the employee is hard-pressed to show that the reason given for his termination was not credible. *See Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986). Plaintiff has not raised an issue of fact that the stated reason

for his termination was pretextual.  Accordingly, the Court will enter summary judgment in favor of RTM on Plaintiff's retaliation claim.

### C.    Bullard-Plawecki Act

Finally, Plaintiff contends that RTM violated the Bullard-Plawecki Act when RTM failed to provide a copy of Plaintiff's employment file.  The Bullard-Plawecki Act provides:

> An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals, generally not more than 2 times in a calendar year [], the employee's personnel record if the employer has a personnel record for that employee.

MICH. COMP. LAWS § 423.503 (2001).  An employer who violates the Bullard-Plawecki Act may be subject to attorney's fees, costs, and further damages as dictated by MICH. COMP. LAWS § 423.510 (2001).

RTM has failed to provide Plaintiff with a copy of his complete personnel file. Plaintiff alleges that RTM "deliberately lost or disposed of [the file] to cover up evidence of retaliation, discrimination, or both."  (Pl. Br. at 19).  Plaintiff has not supported this conclusory allegation with any evidence, and it is purely speculative in nature.  RTM claims that the file was lost in the corporate structure after mailing the document several times. Defendant has attempted to locate the file, but has been unable to do so.  (Mench Aff. ¶ 3-4, Wendorf Aff. ¶ 2-3).

An employer is not required under the Bullard-Plawecki Act to produce a lost personnel file.  *Michels v. Delaware McDonald's Corp.,* 1985 U.S. Dist. LEXIS 21074, at

* 2 (E.D. Mich. Apr. 3, 1985) (unpublished opinion).  In *Michels,* the employer lost the employee's record but later discovered it.  *Id.*  The court determined that the Bullard-Plawecki Act does not require an employer to produce a lost employment record, and reasoned that if a personnel file is lost then the employer does not have a personnel record for that employee within the meaning and statutory interpretation of the Bullard-Plawecki Act. *Id.*

The court's determination in *Michels* that if a personnel file is lost then the employer does not have a personnel record for purposes of the Bullard-Plawecki Act, is applicable to the case at hand.  Based upon the sound reasoning in *Michels,* RTM is under no obligation to produce the personnel file as long as the file is lost.

## IV.  Conclusion

Plaintiff has failed to come forward with sufficient evidence to raise a material issue of fact on his race discrimination claims or his retaliation claim.  The uncontroverted facts of this case are that Plaintiff did not take the initiative to complete the self-driven managerial training program, that he was accordingly not qualified for promotion to a managerial position, and that he was dismissed for excessive cash shortages according to established company policy.  Plaintiff has produced no evidence which would indicate that his treatment was abnormal, more harsh, or different from the treatment of any other employees.  The facts also do not indicate that RTM has violated the Bullard-Plawecki Act because an employer is under no obligation to produce a lost file.  Although Plaintiff asserts that there may have

27

been some hidden agenda behind his lack of promotion, his firing, and the loss of his personnel file, there are insufficient facts to support these assertions.   Plaintiff is at best requesting the Court or a jury to speculate about such hidden agendas.  Such speculation is insufficient to defeat a motion for summary judgment.  Accordingly, Defendant's motion for summary judgment will be granted on all claims.

An order and judgment consistent with this opinion will be entered.


Date: _____July 22, 2005_____        /s/ Robert Holmes Bell_____
                                          ROBERT HOLMES BELL
                                          CHIEF UNITED STATES DISTRICT JUDGE

28